UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| ELIZABETH MCCRAY, | ) |
| Plaintiff, | ) |
| v. | ) No. 4:09-CV-572 CAS |
| CHRYSLER LLC, | ) |
| Defendant. | ) |

**MEMORANDUM AND ORDER**

This matter is before the Court on defendant Chrysler LLC's Motion for Summary Judgment. Plaintiff Elizabeth McCray opposes the motion. For the following reasons, the Court will grant defendant's motion for summary judgment.

**I. Background**

Plaintiff Elizabeth McCray, an African-American female, filed this action against her former employer, Chrysler LLC ("Chrysler"), asserting claims of racial discrimination, harassment, and retaliation in violation of Title VII of the Civil Rights Act of 1964. Defendant moves for summary judgment on the grounds that McCray signed an agreement as part of the employees voluntary buyout program that released Chrysler from any claims and causes of action that she had against it under any statute or common law.

**II. Legal Standard**

The standards applicable to summary judgment motions are well settled. Pursuant to Federal Rule of Civil Procedure 56(c), a court may grant a motion for summary judgment if all of the information before the court shows "there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." See Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

The initial burden is placed on the moving party. City of Mt. Pleasant, Iowa v. Associated Elec. Co-op., Inc., 838 F.2d 268, 273 (8th Cir. 1988) (the moving party has the burden of clearly establishing the non-existence of any genuine issue of fact that is material to a judgment in its favor). Once this burden is discharged, if the record shows that no genuine dispute exists, the burden then shifts to the non-moving party who must set forth affirmative evidence and specific facts showing there is a genuine dispute on a material factual issue. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986).

Once the burden shifts, the non-moving party may not rest on the allegations in his pleadings, but by affidavit and other evidence must set forth specific facts showing that a genuine issue of material fact exists. Fed. R. Civ. P. 56(e); Herring v. Canada Life Assur. Co., 207 F.3d 1026, 1029 (8th Cir. 2000); Allen v. Entergy Corp., 181 F.3d 902, 904 (8th Cir. 1999). The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). A dispute about a material fact is "genuine" only "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Herring, 207 F.3d at 1029 (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)). A party resisting summary judgment has the burden to designate the specific facts that create a triable question of fact. See Crossley v. Georgia-Pacific Corp., 355 F.3d 1112, 1114 (8th Cir. 2004). "Self-serving, conclusory statements without support are not sufficient to defeat summary judgment." Armour and Co., Inc. v. Inver Grove Heights, 2 F.3d 276, 279 (8th Cir. 1993).

With this standard in mind, the Court accepts the following facts as true for purposes of resolving this motion for summary judgment.

## III. Facts[1]

Plaintiff Elizabeth McCray began working for Chrysler in March 1998 as a temporary part-time auto worker. She worked at Chrysler's St. Louis Assembly Plant North (the "North Plant") in Fenton, Missouri. In 2001, McCray became a full-time, hourly auto worker and was a member of the United Automobile, Aerospace and Agricultural Implement Workers of America ("UAW") and its Local Union No. 136. As a member of the UAW's bargaining unit, McCray's employment was covered by a collective-bargaining agreement between Chrysler and the UAW.

In 2008, Chrysler negotiated with the UAW to create a number of programs to offer to certain bargaining unit employees. One of these programs was the 3rd-4th Quarter 2008 Enhanced Voluntary Termination of Employment Plan (the "Plan"), which was a joint program collectively negotiated and administered by the UAW and Chrysler exclusively for hourly and salaried bargaining unit employees. Under the Plan, employees whose applications were approved would receive a guaranteed lump sum payment of $100,000 less applicable taxes and other deductions set forth in the

---

[1] The Court notes that in compliance with Local Rule 4.01, defendant submitted a Statement of Uncontroverted Material Facts in support of its motion for summary judgment. Defendant's Statement of Uncontroverted Material Facts sets forth each fact in a separately numbered paragraph with appropriate citations to the record. In opposition, plaintiff was required to "include a statement of material facts as to which the party contends a genuine issue exists. Those matters in dispute shall be set forth with specific references to portions of the record, where available, upon which the opposing party relies." See Local Rule E.D. Mo. 4.01.

Plaintiff has not filed a statement of material facts as to which she contends a genuine issue exists. She states that she told defendant "that regardless of them terminating us August 10, 2008 I was still filing my charges against them regardless of them putting that stipulation into the documents that they mailed to the terminated employees in November of 2008." She also states that she disputes "the fact that I left voluntar[ily]," although she does not dispute that she signed the application and release as part of defendant's "Enhanced Voluntary Termination of Employment Plan." Plaintiff's response to defendant's motion for summary judgment argues the merits of her case, but does not specifically controvert any of the material facts outlined by defendant. All the statements of material facts contained in defendant's SOF are deemed admitted for the reasons stated above.

Plan. The Plan also continued coverage of hospital, surgical, medical, drug, vision, and hearing aid benefits under the Health Care Benefits Program for up to twelve months following the employees separation from Chrysler.

An employee whose Plan application was approved would cease to be a Chrysler employee and would have his or her seniority terminated at Chrysler plants. The deadline for applications under the Plan was November 30, 2008. Employees could rescind their Plan application by informing their local Employment Office on or before that date.

On November 10, 2008, Chrysler mailed McCray a Plan application, which included a release of claims and a brochure describing the Plan. On November 18, 2008, McCray signed and dated the application and release. The Plan application and release signed by Ms. McCray provided:

> I am voluntarily applying for participation in the 3rd - 4th Quarter 2008 EVTEP and acknowledge that I have not been threatened or coerced to apply by any representative of Chrysler LLC or the UAW.
> . . .
> I have also reviewed the Employee Brochure of Understanding the EVTEP ("Brochure"). I fully understand the terms of the Brochure, bulletin board notice and this application. No representative of Chrysler LLC or the UAW has made any statements to me contrary to these documents.
> . . .
> I agree that, in consideration of EVTEP benefits, if I execute and Chrysler LLC approves this application, <u>I release, waive and forever discharge Chrysler LLC, its subsidiaries and affiliates . . . from any charges, claims, grievances, demands and causes of action under any statute or common law.</u> This release, however, does not waive (i) any claims for payment of Sickness and Accident Benefits through my separation date that I have filed and that are currently pending under the claims review procedures of the Group Insurance Program, (ii) claims to enforce the terms of the EVTEP, (iii) back wages and employee benefits that I may be entitled to receive resulting from a currently pending grievance resolved through the collectively bargained grievance procedure, and (iv) claims that arise after my execution of this application.

Def. Ex. 1C (emphasis added).

In completing the application, McCray was free to consult with an attorney or her local UAW representatives before signing the Plan application and release.

The North Plant's Employment Office received McCray's signed application and release on November 21, 2008. McCray's Plan application and release was accepted by Chrysler and her employment was voluntarily terminated effective November 30, 2008. On January 9, 2009, Chrysler mailed McCray a check to her last known mailing address of record that included the $100,000 lump sum payment less applicable taxes under the Plan and a $1,747.80 pay adjustment, which represented her unused vacation and holiday pay.

On April 14, 2008, McCray filed a charge of discrimination against Chrysler with the EEOC claiming race discrimination, harassment, and retaliation. Her charge stated that the dates of the alleged discrimination took place between September 18, 2007 and February 29, 2008. On April 14, 2009, McCray filed this lawsuit, which encompasses the allegations raised in her April 2008 EEOC charge.

## IV. Discussion

In the employment context, courts apply general contract principles to determine the validity of a release. See Ulvin v. Northwestern National Life Ins. Co., 943 F.2d 862, 866-67 (8th Cir. 1991). Under ordinary contract principles, the validity of a release depends on whether it was entered into voluntarily and knowingly. Lancaster v. Buerkle Buick Honda Co., 809 F.2d 539, 541 (8th Cir. 1987). The Eighth Circuit's approach in determining whether a release was knowing and voluntary is to examine the circumstances under which the release was obtained.

In Ulvin v. Northwestern Nat'l Life Ins. Co., 943 F.2d 862 (8th Cir. 1991), the Eighth Circuit affirmed a district court's dismissal of a plaintiff's claim after the plaintiff knowingly and voluntarily released his rights under an employment termination agreement. Applying ordinary contract principles, the district court dismissed plaintiff's action under the ADEA, finding that he had agreed to release his employer of all liabilities and any other obligations except as set forth in the termination agreement. Among other findings, the district court observed that the plaintiff had access to the agreement for a considerable amount of time, chose not to consult an attorney, and that he was able to negotiate the addition of favorable terms to the agreement. Moreover, the agreement was written in "clear, simple language, that . . . granted [plaintiff] severance benefits in excess of those required by contract or statute, and that [plaintiff] decided to sign the agreement of his own free will." Id. at 867; see also Lancaster v. Buerkle Buick Honda Co., 809 F.2d 539, 541 (8th Cir. 1987) (affirming summary judgment in favor of employer where employee signed clear, simple, unambiguous release of all his claims related to the termination of his employment).

Here, McCray was mailed the application, which included a release of claims, and a brochure describing the Plan on November 10, 2008. Additionally, the North Plant posted a bulletin-board notice describing the Plan. The deadline for signing the application and release was November 30, 2008. McCray was free to consult with an attorney or her local UAW representative before signing, and she was free to rescind the application at any time prior to the November 30, 2008 deadline. Defendant received McCray's signed application and release on November 21, 2008.

The release signed by McCray used clear and simple language, "I release, waive and forever discharge Chrysler LLC . . . from any charges, claims, grievances, demands and causes of action

under any statute or common law."[2] This language unambiguously releases all claims and causes of action McCray has against Chrysler under statute or common law. This type of general release of all claims has been upheld by the Eighth Circuit. See, e.g., Lancaster, 809 F.2d at 540-41; Pilon v. University of Minn., 710 F.2d 466, 467-68 (8th Cir. 1983).

Plaintiff has not disputed that she signed the agreement of her own free will. While she "disputes the fact that I left voluntarily because that is a lie," this statement does not change the fact that plaintiff agreed to release defendant from any charges, claims, grievances, demands, or causes of action.[3] Additionally, although plaintiff did not negotiate the Plan herself, the Plan was a joint program collectively negotiated and administered by McCray's union, the UAW, and Chrysler. Under ordinary contract principles, plaintiff has not shown herself to be "bereft of the quality of mind essential to the making of a contract." Ulvin 943 F.2d at at 866 (quoting Anselmo v. Manufacturers Life Ins. Co., 771 F.2d 417, 420 (8th Cir. 1985)).

Viewed in the light most favorable to plaintiff, there is no genuine issue of material fact with regard to the facts underlying the signing of the application and release. Plaintiff has not alleged or shown that defendant was guilty of exploitation, fraud, or overreaching. She knowingly and voluntarily entered into the termination agreement and released her Title VII claims of discrimination against Chrysler arising out of events occurring between September 18, 2007 and February 29, 2008.

---

[2]The "clear, simple language" in the Ulin case provided: "Acceptance by you constitutes a full and complete release of WSC and its affiliates with respect to liabilities, severance pay or any other obligation except as set forth herein." Ulin, 943 F.2d at 866 n.3.

[3]To the extent she might be arguing that she signed the release under duress, McCray has not established any circumstances under which she was prevented from exercising her free will by threats or wrongful conduct. See Littrell v. City of Kansas City, Mo., 459 F.3d 918, 921 (8th Cir. 2006) ("Financial necessity or the threat of employment termination does not alone constitute duress.").

## V. Conclusion

For the foregoing reasons, the Court concludes that defendant is entitled to summary judgment on plaintiff's claims of discrimination, harassment, and retaliation under Title VII of the Civil Rights Act of 1964, as amended, related to her employment with defendant.

Accordingly,

**IT IS HEREBY ORDERED** that defendant Chrysler LLC's Motion for Summary Judgment is **GRANTED**. [Doc. 24]

**IT IS FURTHER ORDERED** that defendant's Motion to Dismiss Case Pursuant to Federal Rule 12(b)(6) is **DENIED as moot**. [Doc. 13]

An appropriate judgment will accompany this memorandum and order.

**CHARLES A. SHAW**
**UNITED STATES DISTRICT JUDGE**

Dated this ___23rd___ day of February, 2010.